SIGNED THIS: April 2, 2024

_____
**Mary P. Gorman**
**United States Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| In Re | ) |
| | ) Case No.   23-70015 |
| JACLYN JULIA JUDGE, | ) |
| | ) Chapter 7 |
| Debtor. | ) |
| _____ | ) |
| | ) |
| ALEC GAITHER, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Adv. No.   23-07008 |
| | ) |
| JACLYN JULIA JUDGE, | ) |
| | ) |
| Defendant. | ) |

# O P I N I O N

Before the Court after trial is a complaint to determine the dischargeability of a debt owed by the Debtor to Alec Gaither. Because Mr.

Gaither failed to meet his burden of proof, judgment will be entered in favor of the Debtor and the debt will not be excepted from her discharge.

### I.     Factual and Procedural Background

Jaclyn Julia Judge ("Debtor") filed her voluntary Chapter 7 petition on January 12, 2023. Relevant to the issues here, she scheduled a debt owed to Alec Gaither in the amount of $3123. The debt was described as unsecured and for "Attorney Fees." The Debtor received her discharge on May 8, 2023.

Alec Gaither, represented by Attorney Michael Fenger, timely filed his complaint to determine the dischargeability of the debt owed to him.[1] In his complaint, he alleged that the $3123 owed to him was for attorney fees he incurred in obtaining an order of protection against the Debtor. He said the Debtor had been ordered to pay the fees by the state court and claimed that such fee awards are nondischargeable as a matter of law as being incurred for willful and malicious injury to person or property. He attached to his complaint a copy of the order of protection against the Debtor he obtained on February 4, 2022, and a copy of a subsequent order entered November 15, 2022, wherein the Debtor was ordered to pay his attorney fees.[2]

After filing the complaint, Attorney Fenger docketed the executed summons showing service on the Debtor's bankruptcy attorneys, the United States Trustee, and the Chapter 7 trustee. When the Court set a status hearing

---

[1] The complaint was captioned as an objection to discharge but prayed only for an exception to the Debtor's discharge and was docketed by selecting dischargeability as the nature of the suit.
[2] The case in which the orders were entered is *Gaither v. Judge*, #2021F0000127, filed in the Circuit Court of McLean County, Illinois.

on the complaint, Attorney Fenger filed an affidavit and request for entry of default. He also requested a continuance of the scheduled status hearing, suggesting that a default was going to be entered and would obviate the need for the hearing. In an order denying the continuance, the Court noted that the Debtor had never been served and that taking steps to remedy that issue would result in the status hearing being canceled. Attorney Fenger then requested the issuance of an alias summons and docketed the executed summons showing service on the Debtor and all the others previously served.

Attorney Fenger subsequently filed a motion for default judgment, which was set for hearing. The Debtor filed a *pro se* response to the motion saying that she had never been served with the complaint and summons; she said that all she had received was the motion for default and notice of hearing on the motion. The Debtor appeared by Zoom at the hearing on the motion, but Attorney Fenger failed to appear. The motion for default judgment was denied.

A request for hearing was then docketed by Attorney Fenger, and a general status on the complaint was set. Both the Debtor and Attorney Fenger appeared. Attorney Fenger asserted that, notwithstanding his prior missteps, he had served the alias summons on the Debtor. The Debtor insisted that he had not served her. The Court directed Attorney Fenger to request another alias and advised the Debtor to be on the lookout for the paperwork being sent to her. A second alias summons was issued, but Attorney Fenger filed the executed summons four times in the main bankruptcy case rather than in this proceeding despite being advised multiple times by the Clerk on how to

properly file the executed summons. Notwithstanding Attorney Fenger's failure to properly file the executed second alias summons, the Debtor filed a *pro se* answer to the complaint.

The proceeding was set for trial on February 13, 2024, with the entry of a trial order that required the parties to docket their trial exhibits one week before trial. Per the order, each exhibit was to be marked using clear identifying labels and Bates numbering. Neither party docketed any exhibits by the deadline. On February 12, the day before the trial, Attorney Fenger docketed seven exhibits on behalf of Mr. Gaither; the exhibits were not labeled to indicate the party submitting them, and the pages were not numbered.

At the trial, the Debtor appeared with Attorney Norman McGill. Attorney McGill said that he had recently been retained but was prepared to proceed. Attorney Fenger appeared with Mr. Gaither. He admitted that he had not timely docketed his exhibits. He offered no excuse for the late filings but asserted that he had found case law that would nevertheless allow the Court to admit the tardy exhibits. The Court responded that the tardy exhibits would not be admitted unless he had case law that compelled their admission; the Court did not intend to exercise its discretion to admit the untimely filed exhibits. Attorney Fenger said he had no such case law. Admission of the exhibits, consisting largely of text messages between the parties, was denied. The Court did allow the admission of the two state court orders that were attached to the complaint.

Alec Gaither testified on his own behalf. He said that, in late 2021 and early 2022, he lived with his parents. Although he was largely unemployed during that time, he did plow snow on occasion. He said that the Debtor was the mother of his son. He testified that he obtained an order of protection against the Debtor in February 2022 because he claimed that she was stalking and harassing him. He had received text messages from the Debtor saying that she had "eyes on" him and that made him uncomfortable. He said that the Debtor kept him and his parents' home under surveillance and that her vehicle was spotted outside of his parents' home on several occasions. The Debtor had accused Mr. Gaither of partying when he had scheduled visitation with his son and, on one occasion, had requested that he send her a picture proving that he was home with the child. Mr. Gaither said that, on another occasion, the Debtor sent him a picture of his vehicle parked outside of a friend's house and accused him of not being with the child during a visitation.

Mr. Gaither said that the Debtor's conduct caused him to be stressed and anxious. He said that he was very uncomfortable and could not hang out with his friends. He felt as though he was constantly being watched. He sought and received the order of protection to end her surveillance of him. He identified the state court orders granting the order of protection and awarding his attorney fees in the amount of $3123.

Under cross-examination by the Debtor's attorney, Mr. Gaither said that his son had been born in November 2021 and that he had filed the family law case before the child's birth to make sure that he was going to have visitation.

-5-

He said that the initial agreement provided him with limited visitation because the Debtor was breastfeeding the baby and had to provide milk whenever he had visitation. He said that the Debtor lived about ten miles from him and that he or his parents did all the pick-ups and drop-offs for his visitations. Mr. Gaither admitted that the Debtor had not damaged any of his property or caused him any physical injury. He expended no money for any counseling or treatment of any kind related to the Debtor's conduct. He described his damages from the Debtor's conduct as not being able to hang out with friends and lead a normal life.

Attorney Fenger called the Debtor as his next witness. She acknowledged the entry of the order of protection against her and that she had been ordered to pay Mr. Gaither's attorney fees. She admitted to sitting outside Mr. Gaither's home in her vehicle on several occasions but was unclear as to the dates of such occurrences. She also admitted to sending Mr. Gaither text messages saying that he would have "eyes on" him. She acknowledged that she had taken a picture of Mr. Gaither's truck on one occasion but claimed that she did so to prove that he was not at home with their son during a scheduled visitation. She denied knowing that Mr. Gaither was working part time plowing snow.

The Debtor admitted to parking down the street from the Gaither home in the "water plant parking lot" on January 14, 2022, when Mr. Gaither had a scheduled visitation. She said that her mother was with her and that Joe Gaither, Alec Gaither's father, came out of the home and asked them to move.

She agreed that she did not move or leave in response to his request. She said that she was trying to figure out who was watching the baby.

Under questioning by her own attorney, the Debtor said that she had never threatened any harm or violence against Mr. Gaither and that she had never committed any violence against Mr. Gaither or damaged any of his property. She said that, as a new mother at only 20 years of age, she was anxious and constantly felt the need to know where her baby was and who was caring for him. She said that Mr. Gaither was only 18 years old when the baby was born.

Joe Gaither was called as the final witness. He said that he was Alec Gaither's father and that his son lived with him. He said that he and his wife cared for their grandson when his son was called to plow snow during scheduled visitations. He testified that his son did not generally go out socially when he had his scheduled visitations. He recalled the Debtor parking outside of his home on several occasions and, on one occasion, following them home after they picked up their grandson from her. In particular, he recalled that, on January 14, 2022, the Debtor and her mother were parked in a parking lot down the street from his home. He said that he approached their vehicle and asked them to please stop watching his home. He said that the Debtor's mother engaged with him, so he left and called the police.

Under cross examination, Joe Gaither admitted that, during the January 14 incident, the Debtor was not parked in front of his house but rather down the street. He also admitted that the Debtor delivered some breast milk to him

and his wife on the one occasion she followed them home. He agreed that her conduct in that regard was not stalking.

After the witness testimony, the two state court orders were admitted into evidence and the attorneys briefly argued their respective positions. The matter is ready for decision.

## II.     Jurisdiction

This Court has jurisdiction over the issues before it pursuant to 28 U.S.C. §1334. All bankruptcy cases and proceedings filed in the Central District of Illinois have been referred to the bankruptcy judges. CDIL-Bankr. LR 4.1; *see* 28 U.S.C. §157(a). The determination of the dischargeability of a particular debt is a core proceeding. 28 U.S.C. §157(b)(2)(I). This matter arises from the Debtor's bankruptcy itself and from the provisions of the Bankruptcy Code and may therefore be constitutionally decided by a bankruptcy judge. *See Stern v. Marshall*, 564 U.S. 462, 499 (2011).

## III.     Legal Analysis

Alec Gaither asserts that the debt owed to him by the Debtor for the attorney fees he incurred to obtain the order of protection should be excepted from the Debtor's discharge because the debt arose from willful and malicious conduct. Debts for willful and malicious injury by a debtor to an entity or the property of an entity may be excepted from discharge. 11 U.S.C. §523(a)(6). A creditor claiming that a debt is nondischargeable under §523(a)(6) must prove

-8-

three elements: (1) injury caused by the debtor, (2) willfulness, and (3) malice. *First Weber Group, Inc. v. Horsfall*, 738 F.3d 767, 774 (7th Cir. 2013) (citations omitted). In construing the statute, "willful" modifies "injury" and requires "a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). Actions are willful when both the act and the resulting injury are intended. *Id.* at 61-62. Willfulness can be established by demonstrating either a debtor's motive to inflict injury or that the debtor knew her act was substantially certain to cause injury. *First Weber Group*, 738 F.3d at 774 (citing *Bukowski v. Patel*, 266 B.R. 838, 843-44 (E.D. Wis. 2001)); *Chuipek v. Gilmore (In re Gilmore)*, 590 B.R. 819, 835 (Bankr. N.D. Ill. 2018). Actions are malicious if they are taken without just cause or excuse or in conscious disregard of one's duties. *First Weber Group*, 738 F.3d at 774 (citation omitted).

Mr. Gaither says that the Debtor inflicted a willful and malicious injury upon him, but he did not identify any such injury in his complaint or testimony. His attorney argued that any fee award made in a state court order of protection proceeding is nondischargeable as a matter of law or, alternatively, that the Debtor should be collaterally estopped from raising a defense because of the findings made by the state court in the order of protection proceeding. As will be discussed below, neither theory is supported by the law or facts here. And, again, Mr. Gaither failed to present proof at the hearing to support his request for relief.

*A. Attorney Fee Award in an Order of Protection Matter is Nondischargeable Only Upon Proof of Willful and Malicious Injury*

In his complaint, Mr. Gaither alleged that the "United States Bankruptcy Courts have long held that attorney fee reimbursements ordered to be paid in relation to an order of protection are non-dischargeable" under §523(a)(6). In making that allegation, he relied largely on *Weinstein & Assocs. v. Lymberopoulos (In re Lymberopoulos),* 453 B.R. 340 (Bankr. N.D. Ill. 2011). Mr. Gaither seriously overstates the holding of *Lymberopoulos.*

*Lymberopoulos* involved a situation where no one—including the debtor— disputed that the debtor had inflicted personal injuries and property damage on a woman who then obtained an order of protection against him. *Id.* at 344. The twist in *Lymberopoulos* was that the plaintiff in the adversary proceeding was the law firm that had represented the woman who was the victim of the debtor's wrongful conduct; the question to be decided was whether the law firm itself rather than the victim could enforce the fee award and obtain a judgment of nondischargeability. *Id.* The *Lymberopoulos* court found that, because the underlying judgment for the injuries to the victim was nondischargeable, the attorney fee award was likewise nondischargeable. *Id.* The case states unequivocally that, for a creditor to prevail on a §523(a)(6) cause of action, there must be proof "that the act giving rise to the debt was both willful and malicious." *Id.* at 343. The case offers no support for Mr. Gaither's position that fee awards related to orders of protection are nondischargeable as a matter of law regardless of the underlying facts giving rise to the order of protection. Mr.

Gaither's argument that the fees owed to him by the Debtor here are nondischargeable as a matter of law and without any proof of injury or willful and malicious conduct does not have merit and will not be sustained.

### B. Collateral Estoppel Does Not Bar the Debtor's Defenses

In his closing arguments, Attorney Fenger, on behalf of Mr. Gaither, argued that the two orders attached to the complaint and admitted into evidence were sufficient, in and of themselves, to support a finding of nondischargeability. Attorney Fenger did not use the term "collateral estoppel" and did not cite to any case law in support of his argument. But his assertion that the state court found that the Debtor had willfully and maliciously inflicted an injury on Mr. Gaither and that the issue therefore cannot be relitigated here implicates the doctrine of collateral estoppel.

The doctrine of collateral estoppel requires that federal courts "give state court judgments the same preclusive effect as a court in the rendering state, applying that state's law." *Gambino v. Koonce*, 757 F.3d 604, 608 (7th Cir. 2014) (citing *Jensen v. Foley*, 295 F.3d 745, 748 (7th Cir. 2002)). The doctrine bars relitigation of an issue if certain requirements are met under the laws of the state in which the judgment was entered. *VanDettum v. Wease (In re Wease)*, 2016 WL 8078316, at *4 (Bankr. C.D. Ill. Nov. 28, 2016). Collateral estoppel under Illinois law requires that "(1) the issues decided in the prior adjudication are identical to issues presented for adjudication in the current proceeding; (2) there be a final judgment on the merits; and (3) the party

-11-

against whom estoppel is asserted was a party or in privity with a party in the prior action." *Gambino*, 757 F.3d at 608 (citation omitted). "[T]he party sought to be bound must actually have litigated the issue in the first suit and a decision on the issue must have been necessary to the judgment in the first litigation." *Id.*

Collateral estoppel may apply in nondischargeability proceedings. *Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991). Accordingly, "if a court of competent jurisdiction has previously entered judgment against the debtor," collateral estoppel may bar the debtor from relitigating "the underlying facts in the bankruptcy court." *Meyer v. Rigdon*, 36 F.3d 1375, 1378 (7th Cir. 1994). But "[t]he party asserting collateral estoppel has the burden of showing with clarity and certainty the precise issues to which it applies." *Wease*, 2016 WL 8078316, at *4 (citation omitted) (internal quotation marks omitted). Detailed findings of fact from the earlier proceeding are necessary for a bankruptcy court to determine what issues were decided and what findings were essential to the other court's judgment. *Id.* at *5.

The only information presented to this Court about the findings of the state court was contained in the two court orders attached to the complaint and entered into evidence at the hearing. One of those orders was labeled "Final Order All Remaining Issues" and was entered in the family law case by the state court on November 15, 2022, with the apparent agreement of the parties and their attorneys. The Final Order contained provisions regarding parenting time, a parenting plan, child support, and other related issues. As to

-12-

the attorney fees at issue here, the Final Order provided that the fees incurred by Mr. Gaither pertaining to the order of protection proceedings in the amount of $3123 were to be paid by the Debtor within 60 days. No findings related to the factual basis for the award of fees were included in the Final Order.[3]

The second state court order considered by this Court was the order of protection entered against the Debtor on February 4, 2022. The order of protection was drafted using a preprinted form containing a number of boxes to be checked if applicable and spaces for the inclusion of specifically tailored provisions. Among the provisions is one on page 2 regarding the state court's findings under which the court is to check the applicable box indicating that its findings were either stated on pages 11 and 12 of the order or "[w]ere made orally and videotaped or recorded by a court reporter[.]" The box adjacent to the representation of oral findings made on the record was checked. At the trial, however, Attorney Fenger represented that there was no court reporter at the state court hearing when the order of protection was entered and that he was therefore unable to provide this Court with a transcript of the state court's findings. Absent such findings, this Court cannot determine what precise issues were litigated and resolved in the order of protection proceeding and cannot find that any of the facts determinative of the dischargeability issues before this Court were actually litigated in the state court.

Despite the oral findings box being checked on the preprinted form instead of the alternative suggesting that the Court's findings were stated on

---

[3] Illinois law provides for the assessment of reasonable attorney fees as part of an order of protection. 750 ILCS 60/214(b)(13). The statute does not require findings of willfulness or malice as a condition of such an award.

pages 11 and 12 of the order, portions of those two pages of the order were completed. Box 7 on page 12 was checked and purports to include the findings required by statute. But the preprinted findings are generic, listed in multiple alternatives, and, in large part, wholly unrelated to the facts here. The preprinted findings do not identify any particular injury suffered by Mr. Gaither and do not include any determination of willful or malicious intent by the Debtor. Thus, even if such findings were sufficient under state law to support the entry of the order of protection, they are wholly insufficient to establish that the particular issues now before this Court were litigated and resolved in the state court order of protection proceedings. Although the state court orders are final and involved the same parties as are before this Court, the orders do not contain detailed findings of fact and thus do not result in the Debtor being collaterally estopped from raising her defenses to the complaint here.

*C. Mr. Gaither Failed to Meet His Burden of Proof*

Having failed to establish that he was entitled to have the debt owed to him excepted from the Debtor's discharge as a matter of law or through the application of the doctrine of collateral estoppel, Mr. Gaither was required to present proof on the issues at trial. The evidence he presented fell well short of what was needed to meet his burden of proof.

Mr. Gaither testified on his own behalf and came across as honest and credible. He was unable, however, to articulate any cognizable injury he suffered from the Debtor's surveillance of him and his residence. He admitted

-14-

that he suffered no personal injuries or property damage. He said that the Debtor's conduct caused him stress and anxiousness. But as the Debtor's attorney pointed out in closing arguments, Mr. Gaither was 18 years old, living with his parents, largely unemployed, and the father of a newborn baby—of course he was stressed and anxious. When asked to describe in his own words how he was damaged, he complained that he could not hang out with his friends because he feared that the Debtor would use that against him in some way. Both Mr. Gaither and his father, however, denied that he spent much time socializing or hanging out with friends during his scheduled visiting times and thus suggested that his damages in that regard were nonexistent or limited at best. The order of protection awarded him no monetary damages. There is no doubt that the Debtor's surveillance of Mr. Gaither made him uncomfortable as he testified or that the Debtor's conduct was sufficient under Illinois law to obtain the order of protection. The testimony presented by Mr. Gaither did not, however, establish that the Debtor's conduct resulted in an injury to Mr. Gaither's person or property that could be quantified as a debt that should be excepted from her discharge.

Further, Mr. Gaither failed to establish that the Debtor's conduct in surveilling him and his residence was willful and malicious. As set forth above, to except the debt from discharge, Mr. Gaither was required to prove that the Debtor intended to injure him or his property and not just that she intended the acts that he claims injured him. *Kawaauhau*, 523 U.S. at 61-62. The only testimony regarding the Debtor's intent came from the Debtor herself, and, like

-15-

Mr. Gaither, she was an honest and credible witness. She admitted to sitting outside Mr. Gaither's home in her vehicle on multiple occasions and said that she did it was because she was a 20-year-old new mother who was anxious about where her baby was and who was caring for him. Nothing in her testimony suggested any intent to injure Mr. Gaither in any way.

The testimony of both Mr. Gaither and the Debtor clearly established that the Debtor was an overly zealous mother who was overly protective of her baby. But none of the testimony even remotely suggested that her conduct was willful or malicious or that she ever intended to injure Mr. Gaither or his property. Mr. Gaither failed to meet his burden of proof, and the debt owed to him by the Debtor will not be excepted from her discharge.

### IV. Conclusion

The Debtor's repeated surveillance of Mr. Gaither and his home constituted the type of harassment sufficient under Illinois law to support the issuance of an order of protection barring her from continuing the activity. 750 ILCS 60/103(7)(iv). Nothing in this Opinion should be construed as condoning the Debtor's conduct. But her conduct did not injure Mr. Gaither's person or property, and her intent in watching Mr. Gaither and his home was not to cause him any injury. All the evidence suggested that the sole motivation for the Debtor's actions was to know at all times where her baby was and who was watching him. She did not act with willful or malicious intent to injure and

therefore any debt related to her conduct will not be excepted from her discharge.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###